UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

Hai Dong Li, Individually and on Behalf of All Others
Similarly Situated

Plaintiff,

-against-                                          **Verified Complaint**

Alibaba Group Holding Ltd.; Ant Financial Service Group,
Ltd. f/k/a Zhejiang Ant and Micro Financial Services
Company, Ltd, Jack Yun Ma, Daniel Yong Zhang and
Jungoing Sun

Defendants.

-------------------------------------------------------------------X

Plaintiff, Hai Dong Li, individually and on behalf of all others similarly situated (the "Plaintiff") by and through the undersigned attorneys, Shotkin & Associates Law Office P.C., hereby file their complaint against Defendants, Alibaba Group Holding Ltd.; Ant Financial Service Group, Ltd. f/k/a Zhejiang Ant and Micro Financial Services Company, Ltd, (the "Defendants") as follows:

## THE PARTIES

1. Plaintiff, Hai Dong Li, is a resident of New York County, State of New York, a consumer of Tmall online transaction platform, and purchased Alibaba shares but suffered damages upon the revelation of the alleged corrective disclosures. .

2. Upon information and belief, Defendant Alibaba Group Holding Ltd. ("Alibaba") is

organized and exists under the laws of the Cayman Islands, with its principal address at 969 West Wen Yi Road, Yu Hang District, Hangzhou 311121, People's Republic of China ("PRC"). Alibaba has a registered agent for service of process, Corporation Service Company, at the following address: 1180 Avenue of the Americas, Suite 210, New York, New York 10036. Defendant Alibaba's ADS are traded on the NYSE under the ticker symbol "BABA."

3.  Upon information and belief, Defendant Ant Financial Services Group, Ltd., f/k/a Zhejiang Ant Small Micro Finance Service Group Co., Ltd. (hereafter "Ant Group") is organized and exists under the laws of the PRC, with its registered address, on information and belief, at Bldg B Huanglong Times Plaza, 18 Wantang Road, Hangzhou, 310000, China. Zhejiang Ant Small & Micro Financial Services Group Company owns and operates an online payment platform. The Company mainly offers mobile payment and other financial services.

4.  Upon information and belief, Defendant Jack Yun Ma is Chairman of Defendant Alibaba and Daniel Yong Zhang is an Executive Vice President and Jungong Sun is an Vice President of Defendant Alibaba serving as key officers of Defendant Alibaba and maintaining offices at Alibaba's principal offices as listed above (hereafter "Defendant Executives").

## STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION

5.  Alibaba is a China-based online and mobile commerce company. The Company operates several highly popular online marketplaces where independent third party merchants sell products to wholesale and retail buyers around the world. Alibaba's marketplaces include Taobao Marketplace, the world's largest online shopping site, TMall, a third-party platform for branded products, Alibaba.com an international wholesale marketplace, and Juhuasuan, a group shopping site.

6.  Alibaba's business is to provide the fundamental technology infrastructure and marketing reach to help businesses leverage the ability of the Internet to establish an online presence and conduct commerce among consumers and businesses. The Company operates e-commerce sales platforms to facilitate trade among third parties and does not engage in direct sales, compete with merchants, or hold inventory.

7.  For a fee, Alibaba will perform various levels of verification of third party vendors' operations in order to assure customers of their authenticity and legitimacy. Alibaba Group also provides customers with further assurance by providing mechanisms to obtain refunds through Alibaba, rather than the merchant, in the event that the customer is unsatisfied. Alibaba earns money by charging merchants pay-for-performance (P4P) marketing fees, display advertising fees, commissions, and fees from memberships, as well as other "value added services".

8.  Plaintiff, Hai Dong Li, run a home furnishing store called Qiaojiaju Furniture Flagship Store with their friends on Tmall, a website for business-to-consumer online retail platform of Defendants, from June 2014 to August 26, 2014, selling leather sofas.

9.  After a two-month trial operation and investigation, Plaintiff found that most of the merchants who sold sofas and beds on Tmall replaced the top layer of leathers advertised as real leathers with artificial leathers on sofas and beds. The artificial leathers were so similar to the real leathers that consumers normally could not distinguish the difference. When Plaintiff used a *'key word'* search for "real leather", those artificial leather products would be displayed on the top of the search results.

10. Tmall was knowingly facilitating the sale of counterfeit products by programming its search engines to suggest the purchase of counterfeit products and by intentionally directing

consumers to merchants that it knew were selling counterfeit goods.

11. Plaintiff's store could not compete with those merchants selling goods with misrepresented material composition because they sustained much higher product costs than those merchants on Tmall. Under the impact of counterfeit goods and goods with misrepresented material composition, Plaintiff was damaged in an amount over $700,000. Plaintiff finally closed his store on Tmall and decided to follow Alibaba Groups lead and take a stand against counterfeit products.

12. Plaintiff and his friends, Xueling Li, Weixing Fang, Yuning Fang, Huang Hua, Cheng Wang and Chengdong Li, used 35 different accounts to order leather furniture from merchants on Tmall 169 times during 2014 and 2015. After they received those products in batches, they sent samples of those products to qualified third-party institutions in China to authenticate their materials. Authentication reports actually showed that the top layer of 94% of those products were not real leathers as they were advertised on the website.

13. Plaintiff complained about those goods with misrepresented material composition and their sellers to Tmall Customer Service and demanded a refund and compensation.

14. In early September 2014, Plaintiff received a phone call from Tmall Customer Service, asking him whether he had used many different accounts to place a mass of orders. Plaintiff admitted it and told Customer Service that most of the leather sofa sellers on Tmall were selling goods with misrepresented material composition and deceiving consumers. Plaintiff also said that he hoped that Tmall would pay attention to this serious problem and take necessary actions.

15. On the same day of that phone call, the Defendants maliciously locked all the accounts of Plaintiff. There were orders which made through those blocked accounts in the proceeding

of right protection or of dispute solution. There were nine orders in the total amount of $4,865 still awaiting delivery. Up to now, there are five order refunds in the total amount of $2,605 still on hold.

16. Defendants and Defendant Executives not only failed to deal with those sellers selling goods with misrepresented material composition, Defendants disclosed Plaintiff's personal information to some of those merchants who contacted Plaintiff to harass and threaten him.

17. Defendants on information and belief at the direction of Defendant Executives advertise globally that Tmall makes a "Genuine Goods Guarantee" to consumers and Alibaba is the pioneer in taking a stance against counterfeit goods and goods with misrepresented material composition. Alibaba is well-known for devoting tremendous human and financial resources, and making appeals to the whole of society, to fight against counterfeit goods and goods with misrepresented material composition.

18. Defendants and Defendant Executives made major false statement and misrepresentations regarding the companies' operating stabilities and financial prospects. Defendants' prospectus stated that the third parties (online merchants) utilized Alibaba and Tmall as the platform to sell the counterfeiting. However, it is not unilateral act that the third parties sold the counterfeiting goods. The third parties sell the fakes with defendants' encouragement and assistance, meaning their actions for working together, mutual benefit together, and selling fakes together. Alibaba's sale of counterfeit products is systematic and persistent.

19. Defendants assisted the online merchants to sell the counterfeit products which defendants have known or shall know. Defendants used their platforms and databases to infringement of the rights of plaintiff and other customers instead of taking necessary actions to protect the customers.

20. Defendants maliciously froze plaintiff's accounts which were related to complaining and protecting rights, and embezzled relevant guaranty bonds. Defendants refused contacting, explaining, or replying to the plaintiff.

21. Tmall has stated that the counterfeit material does not belong to the category of quality assurance. The counterfeit material means the materials must completely non-conform to the all and any materials of the product as the merchants advised. It is completely inaccurate and misleading definition of the counterfeit material.

22. Tmall suggested that when the customers brought any fake goods, they should choose "the fake brand" to apply for refunds or other customers services. Defendants stated that it was impossible that the products were counterfeit because the seller was the owner of the brand, and the seller sold from its factory directly.

23. Defendants alleged that the testing reports provided by the laboratories, which were accredited by China National Accreditation Service for Conformity Assessment and China Metrology Accreditation, did not have any legal effect.

24. Defendants and Defendant Executives in particular have known or should have known that the sellers sold the fake products, but defendants still protected the sellers and assisted them in avoiding the penalties. Defendant Executives set impossibly high bars for consumer complaints as part of a pattern of suborning deception..

25. Plaintiff purchased more than ten orders but complained about the part of the orders which were delivered earlier. Defendants breached customers' privacy to the sellers and assisted the sellers to intercept the shipping of counterfeit products.

26. In China, Defendants provided extensive internal documentation to the fraudster merchants, in China, and Defendants to protect said fraudster merchandisers alleged that Plaintiff was

not the owner of the registered accounts and argued that Plaintiff bought the counterfeit products knowing they were counterfeit and as such were not be protected by Chinese law. Defendants used their tremendous influence to deter Chinese authorities from make objective determinations and Defendants ultimately helped protected fraudster merchants to continue to sell the counterfeit products.

27. Defendants knowingly facilitate merchants' sales of counterfeit, fake, substandard, and illegal products. They set up unreasonable procedural hurdles for harmed consumers wishing to file a complaint. These hurdles prevented consumers from lodging their complaints and hindered enforcement agencies' efforts to identify violations.

28. Plaintiff now sue Defendants herein for securities fraud in connection with Defendants' assistance with selling counterfeit products, and Defendants Alibaba's initial public offering ("IPO") and failure to disclose these deceptive practices properly and fully thereafter..

29. China's State Administration of Industry and Commerce (SAIC) is China's powerful regulators of businesses and economic activity. An SAIC administrative guidance meeting is a formal non-compulsory administrative law enforcement proceeding used by the SAIC to direct businesses to comply with laws and regulations. Failure to accept and follow SAIC's administrative guidance typically results in severe administrative penalties.

30.  On July 16, 2014, the SAIC held an unprecedented meeting with Defendant Alibaba. At the meeting, the SAIC specifically told Alibaba that its e-commerce platforms were guilty of a myriad of violations of PRC laws and regulations and that it faced imminent threat of thousands of financial penalties each worth 1% of daily sales amounts if the violations were not stopped. The SAIC's escalating administrative actions against Alibaba's sale of counterfeit, shoddy and illegal goods could reasonably be expected to have a material

impact on Alibaba's operations, and in fact Alibaba believed it would have a material impact on its operations.

31. Defendants deliberately allow counterfeit goods to be sold on their sites, as it draws revenues from advertisements linked to the sales. With the SAIC crackdown on sale of counterfeit goods, Alibaba would lose its lucrative niche as a marketplace for counterfeit goods, and its revenues and profits would therefore decline.

32. In 2014, Alibaba completed a $25.0 billion initial public offering on the NYSE (the "IPO"). Yet Defendant Alibaba concealed their deceptive practices and made misleading statements in its annual reports and news which had a material effect on the revenues, incomes and share prices.

33. Plaintiff Haidong Li purchased Alibaba shares in Jan 2016 but sold out in Feb 2016 and Dec 2017 because of concerns about Alibaba's continued practices and disclosure omissions.

34. Plaintiff knows he can not possibly secure relief or justice in China where the courts and regulatory authorities are hopelessly biased in favor of Alibaba and bring this suit herein confident that United States courts will provide a fair and impartial hearing.

## JURISDICTION AND VENUE

35. Jurisdiction is conferred by §27 of the Exchange Act. The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

36. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C.

§1391(b).

37.   In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## AS AND FOR A FIRST CAUSE OF ACTION

### For Violations of §10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

38.   Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

39.   This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

40.   During the period, Defendants and Defendant Executives in particular engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff; made various untrue statements of materials facts and omitted to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading; and employed devices, scheme and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to , and did deceive the investing public, including plaintiff and other shareholders, as alleged herein artificially inflate and maintain the market price of Alibaba securities; and cause plaintiff and other shareholders to purchase Alibaba securities at artificially inflated prices. In furtherance of this unlawful scheme, plan an course of conduct, Defendants and each of them, took the action set forth herein.

41. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Alibaba securities. Such reports, filings releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Alibaba's finances and business prospects.

42. By virtue of their positions at Alibaba, Defendants had actual knowledge of material false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants, Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition. Each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

43. Information showing that defendants acted knowingly or with reckless disregard or the truth is peculiarly within defendants' knowledge and control.

44. During the period, Alibaba's stocks were trade on an active an efficient market. Plaintiff and the other members of the class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased Alibaba securities at prices artificially inflated by

Defendants' wrongful conduct. Had Plaintiff and other shareholders known the truth, they would not have purchased said securities, or would not have purchased them at the inflated prices that were paid. At the time of the purchases by Plaintiff and the class, the true value of Alibaba securities was substantially lower than the prices paid by Plaintiff and the other members of the class. The market price of Alibaba securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and other shareholders.

45. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

46. As a direct and proximate result of defendants' wrongful conduct, Plaintiff suffered damages in connection with their respective purchases and sales of the Company securities, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

47. This action was timely filed within two years of discovery of the misleading statements and within five years of the dates of the purchase of the subject securities.


## AS AND FOR A SECOND CAUSE OF ACTION

**Deceptive Acts and Practices**

48. Plaintiff repeat and reallege each and every allegation in the foregoing paragraphs as though fully set forth herein.

49. Defendants are an indispensable part of the enterprise engaged in selling the goods with misrepresented material composition, resulting in consumer confusion and market chaos.

50. The merchants who sell goods with misrepresented material composition could not have

sold their products through the Tmall but for the Defendants' operation of online marketplaces and other sites, as well as the Defendants' role in connecting online consumers to online merchants selling the goods with misrepresented material composition.

51. Defendants have provided, and continue to provide, marketplaces for the sales of goods with misrepresented material composition and facilitated the financing and commercial operations of the merchants selling goods with misrepresented material composition by providing marketing services that directed buyers to the goods with misrepresented material composition, including offering its merchants micro loan s and Trade Assurance, processing online payment transactions for the goods with misrepresented material composition, and shipping the goods with misrepresented material composition to consumers.

52. Defendants knew and should have known that they were facilitating the merchants' sale of goods with misrepresented material composition.

53. Defendants also provide substantial assistance in the form of infrastructure support and financing to their online merchants selling goods with misrepresented material composition.

   a) Defendants provide essential support services that enable the sale of goods with misrepresented material composition on their online platforms, including "Web-based and mobile interfaces to manage listings, orders and customer relationships, as well as cloud computing services" for their enterprise resource planning and client relationships management.

   b) Defendants arrange shipping and delivery services that actively assisted the merchants selling goods with misrepresented material composition to provide buyers with goods with misrepresented material composition. The Alibaba Group 48%-owned affiliate, China Smart Logistics (Zhejiang Cainiao Supply Chain Management Co., Ltd.),

operates a central logistics information system that works with third-party logistics and delivery companies. Through the affiliate, the merchants selling goods with misrepresented material composition were able to arrange for the shipping and delivery of, *inter alia,* goods with misrepresented material composition.

c) Defendants financed certain online merchants, including, on information and belief, merchants selling goods with misrepresented material composition, by providing micro loans to small and medium-sized enterprises ("SME") that sell on both their wholesale and retail marketplaces and often have trouble accessing credit from large banks. The loans range from 7 to 360 days and are extended based on "transactional and behavioral data from sellers" used to assess their credit-worthiness. The loans are unsecured and merchants are required to engage in three months of activity on the Alibaba Marketplaces in order to qualify.

d) Defendants' provision of unsecured loans to an online merchant is based on an understanding of the seller's business that would indicate when a seller is engaged in the sale of goods with misrepresented material composition.

e) Defendant Alipay provides "substantially all" payment processing and escrow services for transactions made through the Alibaba Marketplaces, and processed each purchase of the goods with misrepresented material composition.

54. Defendants have derived substantial profits from the sale of goods with misrepresented material composition through their online marketing services, including their P4P service that allows online merchants to bid for keywords that direct buyers to, *inter alia,* goods with misrepresented material composition, and commissions received for each sale of a good with misrepresented material composition settled through Alipay.

55. Defendants knew and should have known that they were engaged in a conspiracy to sell and profit from the sale of goods with misrepresented material composition, and knew and should have known that in the course of that conspiracy, artificial leather products would be manufactured, promoted and sold in the Alibaba Marketplaces with the assistance of escrow services, payment processing services, Trade Assurance.

56. Defendants' knowledge, intent, and agreement to engage in the scheme to promote and sell goods with misrepresented material composition is also clearly demonstrated by the aforesaid facts experienced by Plaintiff.

57. Defendants' acts as described above constitute deceptive acts and practices and false advertising in violation of N.Y. Gen. Bus. Law §349.

## FOR A THIRD CAUSE OF ACTION

### Breach of Contract

58. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth therein.

59. Defendants alleged that Plaintiff was not consumer, which breached the Tmall service agreement, because when Plaintiff placed orders on Tmall, Plaintiff and Tmall agreed to be bound by the Tmall service agreement.

60. The Genuine Goods Guarantee Service Specifications of Tmall pledged that when shopping at the Tmall platform, where goods purchased by Buyers are legally determined to be counterfeit goods or unregistered imported goods or goods with misrepresented material composition, the Buyer has the right to raise a complaint against the Merchant and apply for "Genuine Goods Guarantee" compensation. The compensation amount will be limited to

"refund one (1) and compensate four (4) + delivery costs borne by the Buyer" calculated in accordance with the actual price of the goods paid by the Buyer.

61. The Tmall Service Terms provided that misrepresentation of material composition: refers to the situation where a Merchant's descriptions of all materials or composition of a good is entirely inconsistent with the good received by the Buyer. A Merchant that misrepresents material composition for the first time will receive a deduction of six (6) points. A Merchant belonging to a special category that misrepresents material composition will receive a deduction of twelve (12) points, regardless of whether such misrepresentation was made for the first time. In the case of misrepresentation of material composition, Tmall Global will delete the good with misrepresented material composition posted by the Member.

62. Defendants breached the aforesaid service agreements with Plaintiff by locking his purchasing accounts while proceeding with transactions involved in dispute resolution, which prevented Plaintiff from receiving the purchased goods and resolving disputes through consumer's remedies.

63. In addition, Defendants breached the confidential covenants in service agreements by providing Plaintiff's personal information to certain merchants, some of whom harassed and threatened Plaintiff.

64. As a result of foregoing, Plaintiff suffers from mental anguish and sustained extensive financial damage.

## FOR A FOURTH CAUSE OF ACTION

### False Advertising

65. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as

though fully set forth herein.

66. Defendants advertised since 2012 that if any online merchants on Tmall sold counterfeit goods or goods with misrepresented material composition, they would be removed from Tmall and would never be allowed to return, and the consumers who unwittingly bought counterfeit goods or goods with misrepresented material composition would be paid back with 5 times the amount of money they had paid for the counterfeit goods or goods with misrepresented material composition.

67. Upon information and belief, "Genuine Goods Guarantee" is the most crucial promotion point of Tmall online market. Defendants declares that all the goods on Tmall are guaranteed to be genuine, which materially deceives consumers to believe that all goods sold by merchants on Tmall are genuine goods. Defendants further deceive the consumers by claiming that even if they purchase counterfeit goods or goods with misrepresented material composition, they would be paid back with five times the amount of the actual price they have paid, when they, in fact, take retaliatory actions against consumers who report such a problem.

68. Defendants provide protection for unqualified merchants selling counterfeit goods or goods with misrepresented material composition, prevent consumers from dispute solutions, and even knowingly support and conspire with those unqualified merchants to sell and profit from counterfeit goods or goods with misrepresented material composition.

69. Defendants advertised that Alibaba Groups adopted a zero-tolerance policy toward counterfeit goods sold on their platforms to protect consumers.

70. In addition, Defendants advertised that they use big data analytics to trace counterfeit goods or goods with misrepresented material composition and assist authorities to resolve

counterfeiting problems.

71. Defendants also advertised that they closed more than 240,000 online merchants who sold counterfeit goods or goods with misrepresented material composition on Alibaba's transaction platforms. Actually, nevertheless, those merchants were terminated by themselves because of poor operations.

72. Based on the aforesaid Defendants violated N.Y. Gen. Bus. Law§350.

## FOR A FIFTH CAUSE OF ACTION

### Unjust Enrichment

73. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth therein.

74. Defendant Alipay is an escrow-based online payment platform, is the preferred payment solution for transactions on Tmall. It is the most widely used third-party online payment solution in China. To ensure safe transactions, Defendant Alipay uses an escrow system through which payment is only released to the seller once the buyer has received his or her goods in satisfactory condition.

75. As consumers, Plaintiff paid purchasing prices to Defendant Alipay, using its escrow system to ensure safe transactions. However, Defendants blocked Plaintiff's accounts and withheld Plaintiff's payments so Plaintiff has not received his purchases.

76. As of now, Defendants still have Plaintiff's accounts blocked, and have neither refunded Plaintiff 's payments nor delivered the goods.

77. The elements of a cause of action to recover for unjust enrichment are "(1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good

conscience to permit the defendant to retain what is sought to be recovered" *Mobarak v. Mowad*, 117 A.D.3d 998, 1001, 986 N.Y.S.2d 539.

78. It is against equity and good conscience to permit the Defendants to retain the money in Plaintiff's blocked account.

## FOR A SIXTH CAUSE OF ACTION

### Bad Faith and Unfair Dealing

79. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth therein.

80. As mentioned above, Plaintiff used Defendant's escrow service to system to ensure safe transactions, but Defendants maliciously blocked Plaintiff's accounts and withheld Plaintiff's payments.

81. Defendants used technological means to force Plaintiff terminate his pending transactions without any compensation.

82. As consumers, Plaintiff neither enjoyed fair transactions nor enjoyed qualified customer services in the transactions..

83. Defendants unfairly dealt with Plaintiff and breached the duty of good faith and fair dealing.

## FOR A SEVENTH CAUSE OF ACTION

### Failure to Fulfill the Duty of Supervision

84. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth therein.

85. Plaintiff reported the merchants who sold goods with misrepresented material composition to Tmall Customer Service, but Tmall blocked Plaintiff's accounts and did nothing to punish those merchants who sold goods with misrepresented material composition.

86. As the owner of a third-party online transaction platform, Defendant Alibaba Groups has a duty to supervise the merchants on Alibaba transaction platforms.

87. However, Defendants, as mentioned above, knowingly assist merchants on its platform Tmall to sell counterfeit goods or goods with misrepresented material composition.

88. Defendants fail to fulfill the duty of supervision.


## FOR A EIGHTH CAUSE OF ACTION

### Invasion of Privacy

89. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth therein.

90. Defendants disclosed Plaintiff's personal information to some merchants who sold goods with misrepresented material composition, resulting in serious harassment and threats to Plaintiff.

91. Defendants further provided Plaintiff personal information to merchants who sold goods with misrepresented material composition, when those merchants were engaged in civil actions against Plaintiff in China.

92. Based on the aforesaid Defendants violated N.Y. Pub. Off. Law§96.


WHEREFORE, Plaintiff respectfully requests that this Court:

1.        Immediately and permanently enjoin the Defendants, their officers, directors,

agents representatives, successors or assigns, and all persons acting in concert or in participation with any of them from:

    a)   manufacturing, distributing, delivering, shipping, importing, exporting, advertising, marketing, promoting, selling, or otherwise offering for sale goods with misrepresented material composition;

    b)   processing credit card transactions or otherwise facilitating the sales of goods with misrepresented material composition;

    c)   secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, or displaying of all counterfeit goods or goods with misrepresented material composition.

2.      Award Plaintiff compensation for his financial and mental damages arising out of the causes of actions described above in a total amount of 10 billion dollars.

3.      Award Plaintiff reasonable attorneys' fees along with the costs and disbursements incurred herein as a result of Defendants' intentional and willful deceptive actions and breaches of contract.

Dated: March 02, 2018
        New York, New York

                                        Respectfully submitted,
                                        Shotkin & Associates Law Office P.C


                                        By: I Fredeirck Shotkin, Esq
                                        *Attorneys for Plaintiff*
                                        45 W 34th Street, Suite 603
                                                New York, NY 10001
                                        Tel: (212) 268-8668

# CERTIFICATION

STATE OF NEW YORK )

            ) ss:

COUNTY OF NEW YORK   )

I, Haidong Li, being duly sworn, deposes and says:

That I am Plaintiff, in the above-entitled action; I have read the foregoing Verified Complaint and know the contents thereof; that the same is true to my knowledge except as to the matter stated to be alleged upon information and belief, and that as to those matters I believe them to be true.

                                          Haidong Li

Sworn to before me on

    03/03/ 2018

Notary Public

XIAO MENG
Notary Public, State of New York
No. 01ME6325246
Qualified in New York County
Commission Expires May 26,2019